**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **CHAMBERS OF**<br>**CHARLES D. AUSTIN**<br>**UNITED STATES MAGISTRATE JUDGE** | **101 WEST LOMBARD STREET**<br>**BALTIMORE, MARYLAND 21201**<br>**(410) 962-7810**<br>MDD_CDAChambers@mdd.uscourts.gov |

November 27, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Kristine N. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 23-00454-CDA

Dear Counsel:

On February 20, 2023, Plaintiff Kristine N. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 14 & 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case to the Commissioner for further consideration. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on November 5, 2019, alleging a disability onset of February 6, 2018. Tr. 19. Plaintiff's claims were denied initially and on reconsideration. Tr. 19. On March 3, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 37–82. Following the hearing, on March 30, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 30–31. The Appeals Council denied Plaintiff's request for review, Tr. 1, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination

---

[1] 42 U.S.C. §§ 301 et seq.

*Kristine N. v. Kijakazi*
Civil No. 23-00454-CDA
November 27, 2023
Page 2

using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "ha[d] not engaged in substantial gainful activity since February 6, 2018, the alleged onset date[.]" Tr. 22. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "bipolar disorder, anxiety disorder, attention deficit hyperactivity disorder, and post-traumatic stress disorder." Tr. 22. The ALJ also determined that Plaintiff suffered from the non-severe impairments of anemia, ovarian cysts, and substance abuse including opiate abuse, alcohol abuse, and cannabis dependence. Tr. 22–23. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 23. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing unskilled work involving routine tasks but can apply commonsense understanding to carry out detailed but uninvolved instructions. The claimant is limited to no work at a production-rate pace, as in an assembly line, where each job task must be completed within strict time periods. The claimant is limited to occasional interaction with supervisors, coworkers, and the public. The claimant is limited to low stress work defined as requiring simple work-related decisions with only occasional changes in the routine work setting.

Tr. 25. The ALJ determined that Plaintiff was unable to perform past relevant work as an Administrative Assistant (DOT[2] #169.167–010) but could perform other jobs that existed in significant numbers in the national economy.[3] Tr. 29. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 30–31.

---

[2] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

[3] The vocational expert testified that Plaintiff would be able to perform occupations such as Dining Room Attendant (DOT #311.677–018), Kitchen Helper (DOT #319.687–010), and Linen Room Attendant (DOT #222.387-030). Tr. 30.

*Kristine N. v. Kijakazi*
Civil No. 23-00454-CDA
November 27, 2023
Page 3

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

Plaintiff contends that the RFC determination lacks the support of substantial evidence. ECF 11, at 9. Specifically, Plaintiff asserts that the ALJ did not adequately provide a narrative discussion regarding mental limitations included in his RFC finding, in particular, those pertaining to Plaintiff's ability to concentrate, persist, or maintain pace ("CPP"). ECF 11, at 9–16. Defendant counters that substantial evidence supports the ALJ's RFC determination in that the ALJ's evaluation of Plaintiff's mental impairments meets the statutory requirements. ECF 14, at 6.

An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 416.945(b)–(c). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. § 416.945(a). "'[A] proper RFC analysis' proceeds in the following order: '(1) evidence, (2) logical explanation, and (3) conclusion.'" *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 388 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311).

When performing the RFC assessment, the ALJ must provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184 at *7 (S.S.A.); *see White v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-2428, 2017 WL 1373236, at *1 (D. Md. Apr. 13, 2017) (stating that to satisfy the function-by-function analysis requirement, the ALJ must include a "narrative discussion of the claimant's symptoms and medical source opinions" to support the RFC determination) (internal citation omitted). In doing so, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Petry v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)), as amended (Dec. 13, 2000); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original and internal quotation marks omitted) ("In other words, the ALJ

*Kristine N. v. Kijakazi*
Civil No. 23-00454-CDA
November 27, 2023
Page 4

must *both* identify evidence that supports his conclusion *and* build an accurate logical bridge from [that] evidence to his conclusion.").

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)); *see also Jeffrey B. v. Saul*, No. GLS 20-1090, 2021 WL 797920, at *3 (D. Md. Mar. 2, 2021) ("[W]here an ALJ finds multiple RFC limitations, each one must be accompanied by a narrative discussion with a separate analysis citing specific evidence that explains how it supports each of the ALJ's conclusions."); SSR 96-8p, 1996 WL 374184, at *7 (S.S.A.). The functional area of CPP "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. § 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* at § 12.00(F)(2)(c).

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio v. Colvin*, 780 F. 3d 632, 638 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). Thus, where a claimant has a limitation in CPP, an RFC must either include a limitation that accounts for the ability to focus on work activities and stay on task or explain why no such limitation is necessary. An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, an ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017). In other words, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. CV DLB-20-784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021). A function-by-function assessment must include a narrative discussion that explains how certain evidence supports Plaintiff's work-related abilities and limitations. Without such explanation, there is no "accurate and logical bridge from the evidence" to the conclusion, and remand is necessary. *Mascio*, 780 F.3d at 638; *see Stacy C. v. Kijakazi*, No. CBD-20-2833, 2022 WL 814292, at *3 (D. Md. Mar. 17, 2022) (noting that without a proper narrative discussion, "it is impossible for the Court to determine whether the decision was based on substantial evidence.").

In Plaintiff's RFC determination, the ALJ concluded "no work at a production-rate pace, as in an assembly line, where each job task must be completed within strict time periods." Tr. 25. The ALJ determined that Plaintiff had a moderate CPP limitation. Tr. 24. The ALJ examined Plaintiff's reported subjective symptoms such as Plaintiff can "pay attention for the length of a movie," tries to finish what she starts, and has "problems with completing tasks and maintaining concentration." Tr. 24. The ALJ evaluated psychiatric consultation examinations, a score of 28/30 on the mini-mental examination, and evidence that showed Plaintiff's "thought process was relevant, coherent, and goal-directed." Tr. 24. Additionally, the ALJ did not find evidence of active hallucinations, paranoia, delusions, obsessions, or compulsions. Tr. 24. Plaintiff agrees

that the ALJ summarized "some of the relevant medical evidence, discussed some of Plaintiff's symptoms, weighed portions of the opinions of record, and offered a conclusion as to Plaintiff's RFC[.]" ECF 11, at 12.

Despite providing evidence to support the moderate CPP limitation, the ALJ failed to explain why assembly line work accommodates Plaintiff's limitation. *See Everlena G.*, 2021 WL 3912277 at *3 (holding that where an ALJ finds a moderate CPP limitation, the "ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks."). The Court agrees with Plaintiff's contention that the ALJ failed to explain how assembly-line work accommodates Plaintiff's moderate CPP limitation. The ALJ did not provide the necessary discussion for the pace limitation or how this limitation is related to or accommodated by the severe impairments or moderate limitations from which he concluded Plaintiff suffers. The ALJ then concluded that Plaintiff is limited to "no work at a production rate pace where each job task must be completed within strict time periods" but did not provide any narrative as to "bridging" this conclusion. Tr. 25; *see Stacy*, 2022 WL 814292, at *4 (recognizing that the ALJ only mentioned the pace limitation when "providing her concluding paragraph of her findings."). Each limitation in Plaintiff's RFC requires a narrative discussion describing how the evidence used supports the ALJ's conclusion. SSR 96-8p, 1996 WL 374184, at *7; *see Stacy*, 2022 WL 814292, at *4 ("While the ALJ considered the evidence, discussed Plaintiff's complaints and limitations, and pointed out inconsistencies in the record, the ALJ at no point, explained how she concluded that Plaintiff's limitation would be accommodated by the limitation 'work is not performed at a production pace.'").

Because the ALJ's assessment does not include a narrative discussion, the Court's ability to review the issue is hamstrung. *See Thomas*, 916 F.3d at 311 ("[M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion."). The ALJ failed to provide the logical explanation required to bridge the gap between the evidence and the conclusion. *See Pamela P. v. Kijakazi*, No. JMC-22-00354 (D. Md. Nov. 29, 2022) (finding remand necessary when the ALJ did not provide the "proper bridge connecting the evidence the ALJ considered to the conclusion the ALJ reached regarding the pace limitation"); *Woods*, 888 F.3d at 694 (holding that ALJ failed to build an accurate and logical bridge from the ALJ's evidence to his conclusion because the "ALJ never explained how he concluded – based on [the] evidence – that [claimant] could actually perform the tasks required by [the claimant's RFC]."). Absent the required analysis by the ALJ, the Court "is left to speculat[e] whether the ALJ's conclusions are supported by substantial evidence." *Stacy*, 2022 WL 814292, at *5.

Defendant claims the record reflects substantial evidence because the ALJ discussed "at length his rationale behind finding 'moderate' limitations to Plaintiff's [CPP]" citing only to an unrelated page of the transcript.[4] ECF 14, at 15. Defendant further contends that the ALJ's conclusion is supported by listing the various subjective complaints and medical evidence. Simply

---

[4] In the Court's review of page 14 of the transcript, where the rationale is purportedly discussed at length, the Court finds an administrative document unrelated to the ALJ's hearing decision. Tr. 14. Defendant does not point to an area where the ALJ "discussed at length" his explanation for his conclusion.

listing the evidence is only one step in a proper RFC analysis. *See Dowling*, 986 F.3d at 388 (quoting *Thomas*, 916 F.3d at 311) ("'[A] proper RFC analysis' proceeds in the following order: '(1) evidence, (2) logical explanation, and (3) conclusion.'"); *Stacy*, 2022 WL 814292, at *4 (stating the ALJ considered the evidence, discussed Plaintiff's complaints and limitations, and pointed out inconsistencies in the record, but at no point, explained her conclusion).

As noted above, the ALJ failed to properly explain the inclusion of the pace limitation or which impairment or limitation it was meant to accommodate. "With no explanation of how the ALJ concluded this limitation, the Court cannot ascertain whether Plaintiff's RFC is based on substantial evidence." *Stacy*, 2022 WL 814292, at *5; *see also Dowling*, 986 F.3d at 388 (emphasis in original) ("the lack of a rule *requiring* remand does not mean that remand is never the appropriate outcome when an ALJ fails to engage in a function-by-function analysis").

Ordinarily, remand of an SSA decision for legal error is unwarranted unless a plaintiff shows that the error was harmful. *See Josiah T. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3572, 2022 WL 684944, at *2 (D. Md. Mar. 8, 2022) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Plaintiff does not address whether the error she alleges was harmful. *See generally* ECF 11. Nevertheless, remand is appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (citation omitted). Remand is necessary so the ALJ can augment its CPP findings. On remand, the ALJ must either: (1) provide a narrative discussion that explains how the RFC addresses Plaintiff's moderate CPP limitations or (2) explain why no RFC limitation is necessary to address these limitations. *See Talmo*, 2015 WL 2395108, at *3; *Mascio*, 780 F.3d at 638. In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V. CONCLUSION

For the reasons set forth herein, the SSA's judgment is REVERSED due to inadequate analysis pursuant to sentence four of 42 U.S.C. § 405(g). The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge